fore, that leave should be granted to the claimants to file an intervening petition in this case, but deny the authority to bring a separate action for the reasons above stated.

---

## FAILURE TO ENJOIN THE CARRYING ON OF BUSINESS BY A LOCAL TELEPHONE COMPANY.

### Common Pleas Court of Licking County.

### THE GRATIOT & BROWNSVILLE TELEPHONE COMPANY v. THE BROWNSVILLE FARMERS' TELEPHONE COMPANY.

### Decided, September Term, 1911.

*Telephone—Certificate from Public Utilities Commission Not Necessary for a Company Purposing to do a Private Business Only—Failure of Proof as to a Contrary Intention—Adequacy of Present Service and Pleading with Reference Thereto—Injunction—Franchises Distinguished.*

1. A certificate from the public utilities commission is not necessary to authorize a telephone company to carry on a telephone business, unless the company is seeking to exercise some license or franchise, and proof of the incorporation of a telephone company and the purchase of fifty telephone instruments and some poles, cross-arms, wire, etc., is not sufficient to sustain an allegation that the company is about to exercise a franchise and engage in the public service, as distinguished from providing private lines for the use of stockholders and others residing within a short distance.

2. An allegation by an existing telephone company that it is rendering adequate service in the field of its operation, where not supported by any evidence and traversed by the answer of the defendant, requires a judgment in favor of the defendant as to that issue.

3. It is not contempt of court for persons who have been enjoined from entering into the telephone business to communicate with each other over private lines, which are not connected with any switchboard and are not capable of serving anyone except those on each particular wire.

*Winn & Bassett,* for plaintiff.
*Fitzgibbon & Montgomery,* contra.

WICKHAM, J.

The plaintiff filed its petition in this case on the 22d day of August, 1911. It alleges that it is an Ohio corporation, and since the 1st day of September, 1904, it has been, and still is, the owner of a telephone line and plant for the furnishing of telephone service to the public; that the defendant is also an Ohio corporation incorporated about March 10, 1911, and that it is now engaged in the construction of a telephone plant and line in Licking and adjoining counties in the same territory and locality in which the line and plant of plaintiff is located, and that for the purpose of so constructing said plant and line it has purchased supplies, material and equipment; that it has erected about one hundred and fifty poles and that it has purchased about three hundred and forty telephone poles, about two hundred cross-arms and fifty telephone instruments, a switch-board and a large quantity of wire; that no wire has been strung upon the poles erected by the defendant, but that the defendant will string wires unless restrained by an order of this court; that the said proposed line of the defendant is not and never has been opened for public service and that no messages have been either sent or transmitted thereon; that the defendant has so begun the construction of its proposed telephone line without a certficate as required by Section 54 of the public utilities law, passed by the General Assembly of Ohio on the 31st day of May, 1911, and published in the Laws of Ohio, Vol. 102, page 549, *et seq.*; that the public service commission of the state has at no time made any finding or determination that the construction and operation of said proposed line by defendant was proper and necessary for the public convenience; and no such certificate of public necessity has been issued to defendant by said public service commission of Ohio. It further alleges that the defendant proposes to open its said telephone plant and line for public service and will operate the same for the public use without having obtained a certificate as required by Section 54 of the public utilties act.

It further alleges that it, the plaintiff, is operating a telephone line and plant in the same locality and that it is rendering adequate service to its patrons and that the plaintiff will suffer great and irreparable injury by reason of the loss of patronage if the defendant company is permitted to proceed; and it prays for an injunction restraining the defendant and its telephone line, or in any manner attempting to operate said proofficers, agents, etc., from constructing and operating the said posed telephone line and from soliciting plaintiff's subscribers to discontinue the service of plaintiff until it shall have secured from the public service commission of Ohio a certificate of public necessity as aforesaid and as required by Section 54 of the public utilities act.

Upon the filing of this petition, this court granted a temporary injunction, as prayed for in the petition. Afterward, on the 11th day of September, 1911, the defendant company filed a motion to dissolve the temporary injunction upon the grounds: first, that the facts set forth in the petition of the plaintiff were untrue; and, second, that the court had no authority in law to grant the temporary injunction. The case was set for hearing upon a motion to dissolve the temporary injunction and by agreement of counsel representing both parties in the suit the case was submitted upon its merits.

The ground upon which the plaintiff relies for a decree of this court restraining the defendant company from constructing and operating its telephone plant is that the defendant has not secured from the public service commission of the state a certificate that the exercising of the franchise of the company is necessary to the public convenience, assuming that when the defendant's plant is constructed, if it ever be completed, it will become a public service telephone company

A determination of the merits of this case requires a construction of Section 54 of the public utilities act, which reads as follows:

"No telephone company shall exercise any permit, right, license or franchise that may have been heretofore granted but not actually exercised or that may hereafter be granted to own or

operate a plant for the furnishing of any telephone service, thereunder in any municipality or locality, where there is in operation a telephone company furnishing adequate service, unless such telephone company first secures from the commission a certificate after public hearing of all parties interested that the exercising of such license, permit, right or franchise is proper and necessary for the public convenience."

It is admitted by the defendant that it has not secured such a certificate from the public service commission. It maintains, however, that it is not required to secure such a certificate, because it is not seeking to exercise any right, license, permit or franchise; and that it is only where a company or person has a franchise for a certain purpose or purposes that it is necessary for it to secure a certificate from the public service commission.

It admits that its purpose is to serve the public, but in its answer filed in the case it denies that plaintiff company has been or is now furnishing adequate telephone service to its patrons.

It may be stated, for the purpose of clearing the view of this case, that there is no provision of law by which the public service commission may limit or restrict the right of a company as to building or constructing a telephone line or plant.

The petition in this case prays for an injunction to enjoin the defendant from constructing its plant, and the court, upon application, probably without careful consideration, granted a temporary injunction as prayed for in the petition. But the only authority which the state has seen fit to exercise over a public telephone company is to limit its right to use or exercise its franchise and to operate a plant for the furnishing of any telephone service thereunder. It does not pretend to interfere, and I think we are not going too far when we say that it could not interfere, with the construction of a telephone plant. So that the question is, in this case, whether it is necessary for the defendant to secure from the public service commission a certificate authorizing it to exercise its franchise to operate its plant.

It is claimed by counsel for the defendant that it has no right, license, permit or franchise, and therefore it does not come within the provisions of Section 54 of the act under con-

sideration. It is argued by counsel for the plaintiff in their brief that the defendant company has no right, license, permit or franchise to operate a public telephone plant, and it seems to me that by such argument the plaintiff's counsel argue their case out of court, if their view is adopted by the court. Contrary to the argument of counsel for both parties the court's view is that the defendant has a franchise, or may secure a franchise for the use of the public highways, if it is, in fact, a public telephone company.

Section 9170 of the General Code of Ohio provides:

"A magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but shall not incommode the public in the use thereof."

This section of the statutes grants to a public telegraph or telephone company a franchise to use the public highways of the state so long as they comply with its terms.

Section 9180 provides:

"Any person or persons may construct lines of electric telegraphs, from point to point, upon and along any of the public roads and highways and across any waters within the limits of this state by the erection of the necessary fixtures, including posts, piers, or abutments for sustaining the cords or wires of such lines. But they shall not be so constructed as to incommode the public in the use of the roads or highways, or endanger or injuriously interrupt the navigation of such waters. This provision shall not authorize the erection of a bridge across any waters of this state."

This section of the statutes is broader that Section 9170, in that it includes "any person or persons" either individuals or corporations, whereas, Section 9170 is confined to corporations, while telegraph companies only are mentioned in this section of the statutes.

Section 9191 provides as follows:

"The provisions of this chapter apply also to a company organized to construct a line or lines of telephone; and every such

company shall have the powers and be subject to the restrictions
herein prescribed for magnetic telegraph companies.''

The rights granted by these sections of the statutes constitute
a franchise, and it is what is designated by writers on the sub-
ject as a secondary or special franchise and it is entirely dis-
tinguished from the franchise of a company to exist as a cor-
poration.

The right to be a corporation, derived from its charter, is
commonly called the primary franchise and is to be clearly dis-
tinguished from any other rights granted by the statutes.

In *Joyce on Franchises*, Section 3, we read:

''Whenever a corporation is legally formed, the right to be
and exist as such and as a corporation to do the business speci-
fied and authorized in the articles, constitutes a valuable right
which has been called the 'corporate franchise,' as it is a grant
from the sovereign power.''

Also, Section 7:

''A right granted to a corporation to construct, maintain or
operate in a public highway some structure intended for pub-
lic use, which except for the grant would be a trespass, is a
special franchise, and when a right-of-way over a public street
is granted to a corporation with leave to construct and operate
a street railway thereon, the privilege is known as a special
franchise.''

The author of this work in subsequent sections discusses and
defines the distinction between the primary franchise, or right
to be a corporation, and the secondary or special franchise of
the corporation.

This distinction is also clearly expressed by our own Supreme
Court in the case of *Coe* v. *C., P. & I. Ry. Co.*, reported in the
10 O. S., beginning on page 372. I read a paragraph found on
page 385:

''The order of our inquiry next calls for an examination into
the nature and character of the franchises of the corporation.
It has been said, 'the essence of a corporation consists in a
capacity: 1, to have perpetual succession under a special name,

and in an artificial form; 2, to take and grant property, contract obligations, sue and be sued by its corporate name, as an individual; and 3, to receive and enjoy, in common, grants of privileges and immunities.'

"Each of these applies to the corporation under consideration. Under the two first is described what may be termed the franchise of the corporators, or individual members of the corporation, and under the last what may be termed the franchise of the corporation. As said in a recent case: 'A corporation is itself a franchise belonging to the members of the corporation; and a corporation, being itself a franchise, may hold other franchises, as rights and franchises of the corporation.' "

Thus we see that the right to be and exist as a corporation is a franchise belonging to the incorporators, and the rights and privileges of the company itself are the franchises of the corporation.

The next inquiry we will consider is this: Is the defendant in this case a public service corporation and does the proof show that fact? The evidence is that the company had purchased some poles, wire and switch-board; some cross-arms and fifty telephones. They had put the switch-board in place in the village of Brownville, which should be stated is an unincorporated village, and had erected some poles, but it had installed no telephones and strung no wires. The employes of the company were engaged in erecting poles and attaching cross-arms thereto when estopped by the temporary injunction. By what right the company had erected their poles along the line of the public highway does not appear from the evidence in this case.

The defendant company, as has been stated, had purchased fifty telephones. There was no evidence tending to show that they contemplated any greater number. No part of their proposed line was within any municipal corporation. They proposed to build it in the unincorporated village of Brownsville and its vicinity, and their purpose was to secure means of communication among about fifty residents of Brownsville and vicinity. There is no proof that they contemplated any long distance connection or service. It also appeared that the stockholders in the defendant company, with disaffected patrons of

the plaintiff, had discontinued the use of plaintiff's telephone and had organized a company to construct a telephone plant for their own use and convenience and for the purpose of affording them means of communicating with each other. Beyond showing those facts, the record in this case is entirely silent.

The petition of plaintiff alleges that the defendant company was about to engage in the service of the public, but the evidence in the case does not show that fact. I am aware that counsel for the defendant admitted, orally, during the trial, that the defendant was proposing to serve the public, but sometimes counsel in a case admit more than the facts warrant, and I think that may be correctly said here. I am also aware that Section 3 of the public utilities act defines a common carrier and therefore a public servitor, but I think it may be set down as a sound proposition that you can not make a private telephone line an instrument of public utility by an act of the Legislature. Whether the defendant was about to engage in the public service depends upon the nature and character of the business. I can not better express what I desire to say upon the subject than by quoting from the brief of counsel for the plaintiff, and citing some authorities set out in that brief:

"The articles of incorporation of defendant company throw no light on the question as to whether defendant is to conduct a private business or a public business. If the business is private, the public is not interested and has no control over it. A private telephone line may easily be constructed and operated.

"Defendant may, when incorporated, intend to carry on a public business, but is under no obligation, by reason of its charter, to do so. It may at any time change its intention and make its business private. It may intend when beginning the construction of its telephone plant to serve the public, but before it is completed it may make arrangements which will constitute its service a purely private business.

"To constitute the business a public business there must be a public profession of intention and ability to serve the public. Wyman, Public Serv. Corp., Section 221, says: 'It is always a question upon the whole proof in the particular case whether the proprietors of the business have done enough to give people generally the impression that they are at the disposal of the

public.' Again, Section 200, Wyman says: 'Even one who has acquired a virtual monopoly is not forced into public service against his will; it is only when he has held himself out in some way as ready to serve that he is bound thereafter to deal with all indiscriminately.' Again, Section 207: 'While preparation for establishing the service are going on the business should not be regarded as yet upon a public basis. Thus, where a railroad is under construction and not yet publicly open for passengers, it is not a common carrier of passengers.''

And in *Munn* v. *Illinois*, 94 United States, page 113, the court say:

''This brings us to inquire as to the principles upon which this power of regulation rests, in order that we may determine what is within and what is without its operative effect. Looking then, to the common law, from whence came the right which the Constitution protects, we find that when private property is 'affected with a public interest, it ceases to be *juris privati* only.' This was said by Lord Chief Justice Hale more than two hundred years ago in his treatise De Portibus Maris, and has been accepted without objection as an essential element in the law of property ever since. Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but so long as he maintains the use, he must submit to the control.''

The same principle is announced by our Supreme Court in the case of *Ohio Gas Co.* v. *Akron*, 81 O. S., 83.

Our conclusion is, the burden being upon the plaintiff to prove the facts of its petition by a preponderance of the evidence, that the evidence in the case is not sufficient to sustain the allegation that the defendant was about to engage in the public service; that the proposed telephone system of the defendant, so far as the evidence shows, to the contrary, was merely a private telephone plant for the use of the stockholders of the defendant company.

When the case was reached for trial it was stated by counsel that they would not offer any evidence upon the question or issue of whether the plaintiff company at the time of filing the petition was rendering adequate telephone service. Counsel stated that that was a question that would properly come before the public service commission of the state, upon an application made to it by the defendant for the certificate provided for by the act; that it was not a question involved in this suit, but as we construe Section 54 of the act, it is only where there is already a telephone plant in the field in operation and it is rendering adequate telephone service a new company is required to secure the certificate from the public service commission.

The language of the act is, "No telephone company shall exercise any permit, right, license or franchise that may have been heretofore granted," etc., "where there is in operation a telephone company furnishing adequate service."

The converse of that is to be understood, we think, that if there is another telephone company in the locality pretending to serve the public and is not rendering adequate telephone service, the certificate of the commission is not required.

It was deemed important by the plaintiff to aver in its petition the fact that it was rendering adequate service in the following language:

"That continuously since said 1st day of September, 1904, to the present date the plaintiff has operated said telephone plant in sending and receiving telephone messages over its said line, and has during all of said time been engaged in the business of transmitting telephone messages as a common carrier, and during all of said time plaintiff has furnished to the public and to all persons requesting telephone service over said line *adequate service;* and has continuously operated its said plant and line during twenty-four hours of each day, and at all times has maintained its exchange open for service both day and night, and during all of said time plaintiff has furnished and maintained a complete and *adequate service* to all of the localities and communities reached by its said plant and line."

This case is submitted to the court upon a general denial of all the allegations of the petition except those that were ad-

mitted by counsel in advance of the trial. This fact was not admitted by the defendant. We are unable to agree with counsel at this time that that allegation has no importance in this petition. We think it is a necessary averment and being traversed by denial must be sustained by proof. There was no proof offered on this issue and upon that ground, if no other, we think the judgment in this case should be for the defendant. On that ground and upon the ground that the facts in this case do not show that the defendant company was about to engage in the public service, we dissolve the temporary injunction heretofore granted and dismiss the petition at the costs of plaintiff.

After the temporary injunction had been allowed in this case some of the stockholders of the defendant company, who had discontinued the use of plaintiff's telephones, desiring to communicate with each other by telephone, came to the city of Newark and obtained the advice of counsel whether the erection of some poles and installing of some telephones so that certain families could be enabled to communicate with each other would be a violation of the temporary injunction. They were advised by their attorney that it would not be a violation. Thereupon they proceeded to erect some poles and to string wires thereon and installed in the homes of some of the stockholders about twenty-five telephones. There were five or six telephones on each line and there were four or five lines in all. No line could communicate with any other, but the persons upon each line could only talk to a few phones constituting that separate and individual line. There was no switch-board used and no manner or means by which the telephone could be used except for the purpose of talking one neighbor with another. Upon learning these facts counsel for the plaintiff filed against the defendant company and certain others who had telephones placed in their homes and some who had assisted in the construction of the line a charge of contempt of court and that phase or branch of the case was submitted at the same time the main case was tried.

Nearly all the persons who were charged with contempt testified in the case and freely and frankly stated all the facts within their knowledge. It appeared that they are farmers and

many of them are brothers and it appears that some of the lines constructed were for the purpose of enabling one brother to talk to another, and possibly, in addition to that to some one or two of his neighbors. They all stated that they had no intention or desire to violate the order of this court; that they would not have done anything that in their opinion could have possibly been construed as a violation of the temporary injunction; that they relied on the advice of their attorney and did only what he advised them they might properly and safely do.

The court was impressed with the honesty and frankness of these defendants and believes that every word testified to by them was the truth as nearly as the testimony of witnesses can state it.

It is the opinion of the court that the defendants ought not to be held guilty of contempt of court for the reason, first, that the facts do not show that the defendants did any act or thing that was in violation of the temporary injunction; and further, under the circumstances, if there was any doubt about that this court would be inclined to resolve that doubt in favor of the defendants and discharge them from the charge of contempt of court.

We dismiss the charge of contempt against the persons named in the written charge filed. The entry in this case may show that motion for new trial is overruled with exceptions noted.